UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CHARLES F. CRUMPTON, SR.,
Administrator and Personal Representative of
the Estate of Anita Kay Crumpton,                                            Plaintiff,

v.                                                                      Civil Action No. 3:16-cv-478-DJH

HURSTBOURNE HEALTHCARE, LLC and
GGNSC LOUISVILLE HILLCREEK, LLC,                                   Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Anita Kay Crumpton was seriously injured when she was ejected from her wheelchair while being transported from a nursing facility operated by Defendant Hurstbourne Healthcare, LLC to one operated by Defendant GGNSC Louisville Hillcreek, LLC. She died of her injuries soon thereafter. The administrator of Anita's estate, Charles Crumpton, sued Hurstbourne Healthcare and GGNSC Louisville Hillcreek, asserting claims of negligence and wrongful death. (Docket No. 1-1) Hurstbourne Healthcare seeks to compel arbitration pursuant to an arbitration agreement signed by Anita Crumpton. (D.N. 8) Charles Crumpton argues that the agreement does not cover claims pertaining to transportation between facilities and that the circumstances surrounding execution of the agreement were "questionable." (D.N. 11, PageID # 66) Because Crumpton fails to establish that the arbitration agreement is unenforceable, the Court will grant Hurstbourne Healthcare's motion to compel arbitration.

I.   **BACKGROUND**

Anita Crumpton was a resident of Hurstbourne Care Centre at Stony Brook, one of Hurstbourne Healthcare's facilities. (D.N. 1-1, PageID # 7) Upon her admission to Hurstbourne Care Centre, Anita signed a Voluntary Arbitration Agreement applicable to "any legal

1

dispute . . . in any way connected to [her] stay at the Facility" involving a claim for damages of $15,000 or more. (D.N. 8-1, PageID # 49; *see id.*, PageID # 48) The arbitration agreement also bound Anita's administrators and legal representatives. (*See id.*, PageID # 50)

Anita was being transported by bus from Hurstbourne Care Centre to Golden Living Center – Hillcreek when her wheelchair flipped over and her head struck the floor. (D.N. 1-1, PageID # 7) She suffered a subdural hematoma and died two weeks later. (*Id.*, PageID # 7-8) The complaint alleges that Hurstbourne and Golden Living Center employees were negligent in securing Anita's wheelchair. (*Id.*, PageID # 8) In addition, Charles Crumpton asserts a claim of wrongful death. (*Id.*) Hurstbourne Healthcare concedes that the latter claim is not subject to arbitration pursuant to *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), in which the Kentucky Supreme Court held that "a decedent cannot bind his or her beneficiaries to arbitrate their wrongful death claim." *Id.* at 599. (*See* D.N. 8, PageID # 42-44) The analysis below thus applies only to those claims asserted on behalf of Anita's estate.

**II.    ANALYSIS**

Under the Federal Arbitration Act, an agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Sixth Circuit has instructed that "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable[,] meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). The Court applies state contract law to determine whether an

2

arbitration agreement is enforceable. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) (citations omitted).

> Under Kentucky law,
>
> [w]hile there is no question "that the party seeking to enforce an agreement has the burden of establishing its existence, . . . once prima facie evidence of the agreement has been presented, the burden shifts to the party seeking to avoid the agreement." A party "me[ets] the prima facie burden by providing copies of [a] written and signed agreement[] to arbitrate."

*MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013) (alterations and omission in original) (internal citation omitted) (quoting *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004)). The party seeking to avoid arbitration bears "a heavy burden" "to prove there is no agreement." *Id.* (quoting *Louisville Peterbilt*, 132 S.W.3d at 857). Crumpton fails to meet that burden here.

        A.        **A valid agreement exists between Hurstbourne Healthcare and the estate.**

Hurstbourne Healthcare has met its prima facie burden by presenting a signed copy of the Voluntary Arbitration Agreement. *See id.* Crumpton admits that the Agreement was signed by Anita but attacks its validity, asserting that the circumstances surrounding its execution were "questionable." (D.N. 11, PageID # 66; *see id.*, PageID # 68) In support, he points to three checkboxes above the signature line where Anita was to confirm that "[p]rior to signing th[e] Agreement [she] reviewed the Voluntary Arbitration Program Guide" and "was offered a copy of th[e] Agreement to review at [her] convenience," and that she was aware she had twenty days following execution within which to rescind the Agreement. (D.N. 11-1, PageID # 77) The checkboxes indicating confirmation are empty. (*See id.*) From this, Crumpton concludes that Anita "was not given an opportunity to read and understand the [Agreement]" and that she "[m]ore than likely . . . did not know or understand what she was signing." (*Id.*, PageID # 68)

3

He offers an affidavit by Anita's mother, Lou Ann Gardner, who states that she was with her daughter on the date of admission and does not recall seeing or hearing about the Agreement, but if she had, she "would not have allowed [Anita] to sign it." (*Id.*, PageID # 72) Like Crumpton, Gardner views the empty checkboxes as proof that Anita did not read or understand the Agreement before signing it. (*See id.*, PageID # 71-72) Based on Gardner's affidavit, Crumpton asserts that Hurstbourne Healthcare "overreached in acquiring" Anita's signature and that "the Court should consider the document a nullity." (D.N. 11, PageID # 69)

It is unclear whether Crumpton means to assert unconscionability, incompetence, or some other contractual defense. *See Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004) ("[G]enerally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." (citations omitted)). In any event, he fails to establish that the Agreement is invalid.

To the extent Crumpton questions Anita's capacity to contract, he has not offered "clear and convincing evidence" that would justify setting aside the Agreement. *Abell v. Bardstown Med. Inv'rs, Ltd.*, No. 3:11-CV-86-H, 2011 U.S. Dist. LEXIS 65404, at *7 (W.D. Ky. June 20, 2011) (quoting *Lausman v. Brown*, 168 S.W.2d 579, 585 (Ky. 1943)). Under Kentucky law, "[t]here is always the presumption of sanity and contractual capacity, rather than the converse," and courts "require 'some direct proof'" that the contracting party "did not and could not understand [her] acts" at the time the contract was executed. *Id.* (citations omitted). Here, Crumpton offers only self-serving speculation. As Hurstbourne Healthcare points out, Anita had not been adjudicated incompetent, and her admission documents indicate that she was deemed "[i]ndependent" with respect to "[c]ognitive [s]kills for [d]ecision-[m]aking" (D.N. 12-2, PageID # 92); was not "cognitively impaired" (*id.*, PageID # 93); and did not have "poor decision

making skills" when she was admitted to the facility. (*Id.*) In light of this evidence and Crumpton's failure to present clear and convincing proof to the contrary, the Court cannot find that Anita was incompetent to sign the Agreement or that Hurstbourne Healthcare acted unconscionably in procuring her signature. *See Abell*, 2011 U.S. Dist. LEXIS 65404, at *5-*7.

### B. Crumpton's survival claims fall within the scope of the arbitration agreement.

The Court is likewise unpersuaded by Crumpton's argument that the Voluntary Arbitration Agreement does not encompass his claims. The Agreement covers claims "in any way connected to [Anita's] stay at the Facility including, but not limited to, any claims for . . . common law or statutory negligence[ or] gross negligence." (D.N. 8-1, PageID # 49) The accident giving rise to Crumpton's claims occurred during a trip that began at Hurstbourne Healthcare's facility, where Anita was a resident. The complaint alleges that Hurstbourne Healthcare employees were negligent in securing Anita and her wheelchair. (D.N. 1-1, PageID # 7 ¶ 7) Moreover, the claims asserted are of the type listed in the Voluntary Arbitration Agreement. (*See* D.N. 8-1, PageID # 49) The Court thus finds that Crumpton's claims fall within the broad language of the Agreement.

### C. This action will be stayed until the parties complete arbitration.

Hurstbourne Healthcare asks that Crumpton's claims be dismissed or stayed pending arbitration. (*See* D.N. 8, PageID # 35, 46) The FAA provides that "on application of one of the parties," the Court must stay an action subject to arbitration "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Crumpton's survival claims against Hurstbourne Healthcare will therefore be stayed pending arbitration. In the interest of judicial economy, the Court finds it appropriate to stay the remaining claims as well. *See Moses*

*H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) (whether to stay nonarbitrable claims is within court's "discretion to control its docket").

### III. CONCLUSION

A valid arbitration agreement exists between the parties, and Crumpton's survival claims fall within the substantive scope of that agreement. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The motion to compel arbitration (D.N. 8) is **GRANTED**. Crumpton's survival claims against Hurstbourne Healthcare are **REFERRED** to binding arbitration in accordance with the Voluntary Arbitration Agreement.

(2) This action is **STAYED** pending completion of arbitration.

(3) The parties shall submit a joint status report every **ninety (90) days** from the date of entry of this Memorandum Opinion and Order until the conclusion of arbitration. The parties shall promptly report the resolution of arbitration or any settlement.

March 21, 2017

**David J. Hale, Judge**
**United States District Court**